UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DAVON ELIMU MCCOY,

Plaintiff,

v.

DR. H. TATE, et al.,

Defendants.

CASE NO. 1:15-cv-01428-MJS (PC)

**ORDER**

**(1) GRANTING DEFENDANTS' EX PARTE APPLICATION FOR EXTENSION OF TIME;**

**(2) DIRECTING CLERK OF COURT TO ASSIGN DISTRICT JUDGE**

**AND**

**FINDINGS AND RECOMMENDATIONS TO GRANT IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**(ECF Nos. 19, 20)**

**FOURTEEN-DAY DEADLINE**

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. This matter proceeds on Plaintiff's First Amended Complaint, which was found to state Eighth Amendment medical indifference claims against Defendants Dr. Tate, Nurse De Luna, and Correctional Officers ("COs") Lenker, Hill, Twitty, Holland, and Lundy. (ECF No. 11.)

Pending now is Defendants' motion for summary judgment for Plaintiff's failure to exhaust his administrative remedies. (ECF No. 20.) Plaintiff opposes the motion.

**I. Plaintiff's Allegations**

In May 2012, Plaintiff was transferred to California Correctional Institution ("CCI") in Tehachapi, California. Plaintiff suffers from a seizure disorder and chronic pain, and he needs several accommodations, including a ground floor cell, lower bunk bed, frequent cell checks, and an assigned cellmate. Plaintiff's allegations may be summarized as follows:

- In late-June 2012, Plaintiff's cellmate was taken to court, leaving Plaintiff alone in his cell. Plaintiff told COs Holland, Hill, Lenker, Twitty, and Lundy many times that he needed a cellmate because of his seizure disorder, but the CO Defendants dismissed Plaintiff's request as a medical issue. Plaintiff remained without a cell-mate during all times relevant to this action.
- On or around July 2012, Dr. Tate abruptly and without medical reason discontinued Plaintiff's seizure and pain medication and withdrew a walking cane chrono.
- On October 16, 2012, Plaintiff notified Nurse De Luna and COs Holland and Twitty that he felt he was going to have a seizure and might need assistance. None of these Defendants took any precautions, and Plaintiff then had a seizure at around 5 p.m. During the next several hours, the Defendants would have passed by Plaintiff's cell multiple times. Despite these many opportunities to check in on Plaintiff and despite calls for man-down by a neighboring inmate, Plaintiff was not discovered until 11 p.m.

**II. Relevant Procedural Background**

Plaintiff initiated this action on September 16, 2015. On October 8, 2015, Plaintiff's complaint was screened and found to state only an Eighth Amendment medical

indifference claim against COs Holland and Twitty, but no other claims against any other Defendant. (ECF No. 8.) Plaintiff was ordered to file either an amended complaint or notify the Court of his willingness to proceed on the complaint as screened.

Plaintiff filed a First Amended Complaint on November 4, 2015, and it was screened on February 29, 2016. (ECF Nos. 9, 11.) In the Screening Order, the undersigned determined that Plaintiff had stated Eighth Amendment medical indifference claims against Dr. Tate, Nurse Deluna, and COs Lenker, Hill, Twitty, Holland, and Lundy. Plaintiff was again ordered to file either an amended complaint or notify the Court of his willingness to proceed on the amended complaint as screened.

On March 11, 2016, Plaintiff filed a notice of his willingness to proceed on the First Amended Complaint as screened. (ECF No. 12.) Accordingly, service was ordered on the Defendants on April 18, 2016. (ECF No. 15.)

On November 8, 2016, the appearing Defendants[1] (De Luna, Holland, Lenker, Lundy, Tate, and Twitty) filed a motion for summary judgment alleging Plaintiff had failed to exhaust administrative remedies. (ECF No. 20.) These Defendants also filed an ex parte application for an extension of time to respond to the amended pleading. Plaintiff filed an opposition to the former motion but not the latter. (ECF No. 24.)

## III. Undisputed Facts

At all relevant times, Plaintiff was an inmate housed at CCI. Defs.' Statement Undisputed Facts ¶ 1. Following are inmate appeals filed by Plaintiff and processed at CCI between July 2012 and July 2013:

### A. July 2012 Appeal: Dr. Tate

In Appeal Log No. CCI HC 1203-4053, dated July 23, 2012, Plaintiff complained about Dr. Tate's discontinuation of Plaintiff's medication and revocation of his walking cane. Decl. of J. Long Decl. Ex. B (ECF No. 20-3 at 17-18).

[1] On September 12, 2016, the summons was returned unexecuted as to Defendant Hill, who was retired and no longer at CCI at the time of attempted service. (ECF No. 12.)

Plaintiff's appeal was rejected on July 27, 2012, because it was illegible. Pl.'s Opp'n Ex. D (ECF No. 24 at 45). After Plaintiff resubmitted the appeal, it was assigned to the Health Care Appeals Office for response. See id. (ECF No. 24 at 45-46.)

Plaintiff was scheduled for an August 23, 2012, interview regarding his allegations. Long Decl. Ex. B (ECF No. 20-3 at 20-21.) A medical progress note from Dr. Tate dated that same day noted "Patient refused clinic visit. 602 Medical Appeal CCI HC 1203-4053 is thus CANCELED for Refusal To Appear for Interview." Id. (ECF No. 20-3 at 21.)

On September 12, 2012, Appeal Log No. CCI HC 1203-4053 appeal was formally canceled at the first level of review by Dr. S. Shiesha, Chief Physician and Surgeon at CCI, for failure to cooperate after noting that Plaintiff refused to be interviewed. Long Decl. Ex. B (ECF No. 20-3 at 15-16.) The response gave Plaintiff instructions for appealing the decision with a fourteen-day deadline. Id. Plaintiff did not appeal this decision.

**B. August 2012 Appeal: "Disciplinary"**

Plaintiff's unspecified "disciplinary" appeal, assigned Appeal Log No. IAB No. 1201293, was received on August 6, 2012, and screened out on August 22, 2012, at the third level for bypassing lower levels of review. Decl. of M. Voong ¶ 11a, Ex. B (ECF No. 20-2). This appeal was not resubmitted. Voong Decl. ¶ 11a.

**C. October 30, 2012, Appeal: Dr. Tate and CO Defendants**

In an appeal dated October 30, 2012, Plaintiff again accused Dr. Tate of canceling Plaintiff's medication and taking his medical appliance. See Long Decl. Ex. A (ECF No. 20-3 at 8-9). He also complained of the following:

> And because I was being medically disregarded by state medical & custody officials; I was housed in a cell by myself. Therefore I was unable to call (man down!) whenever I had a seizure. … On 10/16/12, I informed several officers I was feeling ill (to no avail.) 2nd & 3rd watch! That night (after dinner) I had a seizure and no one responded until 1st watch did their check (at 11:00 p.m.).

Id. at 9. Later in the appeal, Plaintiff sought "the names of every officer who worked in 5 building on 10/16/12" and "Every official who signed in that day…." Id.

On January 27, 2013, and June 30, 2013, Plaintiff filed CDCR 22 forms ("Inmate/Parolee Request for Interview, Item or Service") complaining that he had not yet received a response to his October 2012 appeal and requesting the status of it. Long Decl. Ex. A (ECF No. 20-3 at 10-11.) Each of these CDCR 22 forms was received by staff on the days submitted, but there is no evidence that Plaintiff received a response to either of these forms. See id.

On July 14, 2013, Plaintiff wrote a letter addressed to "To Whomever it May Concern" again complaining that he had not yet received a response to his October 30, 2012, appeal. Long Decl. Ex. A (ECF No. 20-3 at 7.) It is not clear to whom this letter was sent.

Plaintiff's October 2012 appeal was received on July 18, 2013. Long Decl. Ex. A (ECF No. 20-3 at 8-9). Once received, the appeal was treated as both a staff complaint (as related to the correctional officers) and a health care complaint (as related to Dr. Tate) and therefore assigned two different log numbers: Appeal Log No. CCI-0-13-01539 (Wood Decl. Ex. C [ECF No. 20-4 at 35]) and Appeal Log No. CCI HC 13035212 (Decl. of J. Long in Supp. MSJ Ex. A [ECF No. 20-3 at 8-9]).

On July 26, 2013, the staff complaint, Log No. CCI-0-13-01539, was canceled as untimely. Wood Decl. Ex. C (ECF No. 20-4 at 35). Also on July 26, 2013, the health care complaint, Log No. CCI HC 13-035212, was canceled as untimely after noting the return of Plaintiff's earlier July 23, 2012, Appeal Log No. CCI HC 1203-4053. Long Decl. Ex. A (ECF No. 20-3 at 6).

**D. November 9, 2012, Appeal: Confiscation of Personal Property**

In Appeal Log No. CCI-0-12-02751, dated on or around November 9, 2012, Plaintiff complained about the destruction and/or taking of his personal property. Decl. of J. Wood in Supp. MSJ Ex. A (ECF No. 20-4). This appeal was rejected on November 16,

2012, after having been submitted on the incorrect form. See id. (ECF No. 20-4 at 8-9). Plaintiff's re-submitted appeal was rejected on November 19, 2012, for containing threatening, obscene, demeaning, or abusive language, and for including multiple separate issues. Id. Plaintiff re-submitted the appeal a third time on November 30, 2012, but ultimately withdrew it on February 21, 2013, after he received compensation for the property. Id. (ECF No. 20-4 at 13).

### E. November 30, 2012, Appeal: Retaliation by CO Defendants

In Appeal Log No. CCI-12-02949, filed November 30, 2012, Plaintiff accused COs Holland, Twitty, Lenker and Hill of retaliatory conduct that occurred in September and October 2012 following Plaintiff's verbal altercation with CO Holland over a TV speaker wire. Voong Decl. Ex. A (ECF No. 20-2 at 8-10). Following threats from these COs, Plaintiff feared for his safety and stayed in his cell 24 hours a day, declining showers, yard time, medical, etc. He also claims COs Twitty and Hill denied him food. Plaintiff concluded his appeal by stating "Situations of such, which eventually contributed to Complainant's 'medical mishap,' to which almost ended Complainant's life!!" This appeal bypassed the First Level of Review, was denied at the Second Level of Review, and ultimately denied at the Director's Level of review on April 25, 2013. Id.

## IV. Legal Standards

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. Anderson, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Id. at 248-49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions,

answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000); see Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting Celotex, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. Nissan Fire & Marine Ins. Co., Ltd., 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See Devereaux, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. See Celotex, 477 U.S. at 323.

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment rather than a motion to dismiss. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for nonexhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that

available remedy." Id. at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with the defendant, however. Id. If material facts are disputed, summary judgment should be denied, and the "judge rather than a jury should determine the facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Plaintiff's pleading is signed under penalty of perjury and the facts therein are evidence for purposes of evaluating the defendants' motion for summary judgment.

## V. Analysis

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002); Ross v. Blake, 136 S. Ct. 1850, 1856-57 (2016) (mandatory language of § 1997e(a) forecloses judicial discretion to craft

exceptions to the requirement). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Section 1997e(a) requires "proper exhaustion" of available administrative remedies. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." Id. at 90.

The State of California provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of the CDCR or his designee. Id. § 3084.1(b), § 3084.7(d)(3).

The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones v. Bock, 549 U.S. 199, 218 (2007); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations"). California prisoners are required to lodge their administrative complaint on a CDCR-602 form (or a CDCR-602 HC form for a health-care matter). The level of specificity required in the appeal is described in a regulation:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other

> available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a)(3-4).[2]

Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply with a procedural rule, prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process. Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016); e.g., id. at 659 (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process).

The Defendants have moved for summary judgment as to each of Plaintiff's three claims: (1) In June 2012, COs Holland, Hill, Lenker, Twitty, and Lundy denied Plaintiff's requests for a cell-mate despite knowing that it was a medical issue; (2) In July 2012, Dr. Tate discontinued Plaintiff's seizure and pain medication and withdrew a walking cane chrono; and (3) On October 16, 2012, Nurse De Luna and COs Holland and Twitty took

[2] Several Ninth Circuit cases have referred to California prisoners' grievance procedures as not specifying the level of detail necessary and instead requiring only that the grievance "describe the problem and the action requested." See Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (quoting Cal. Code Regs. tit. 15, § 3084.2); Sapp, 623 F.3d at 824 ("California regulations require only that an inmate 'describe the problem and the action requested.' Cal. Code Regs. tit. 15, § 3084.2(a)"); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (when prison or jail's procedures do not specify the requisite level of detail, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought' "). Those cases are distinguishable because they did not address the regulation as it existed at the time of the events complained of in Plaintiff's pleading. Section 3084.2 was amended in 2010 (with the 2010 amendments becoming operative on January 28, 2011), and those amendments included the addition of subsection (a)(3). See Cal. Code Regs. tit. 15, § 3084.2 (history notes 11-12 providing operative date of amendment). Wilkerson and Sapp used the pre-2011 version of section 3084.2, as evidenced by their statements that the regulation required the inmate to "describe the problem and the action requested" – a phrase that does not exist in the version of the regulation in effect in and after 2011. Griffin is distinguishable because it discussed the Maricopa County Jail administrative remedies rather than the CDCR's administrative remedies. Whatever the former requirements may have been in the CDCR and whatever requirements may still exist in other facilities, since January 28, 2011, the operative regulation has required California prisoners using the CDCR's inmate appeal system to list the name(s) of the wrongdoer(s) in their administrative appeals.

no precautions after Plaintiff told them that he was going to have a seizure, and Plaintiff was not discovered for hours after he had a seizure that same day.

In support of their motion, Defendants have submitted evidence showing that Plaintiff did not properly exhaust administrative remedies as to any claim because he did not file any inmate appeal that received a decision from the third, or highest, level in the inmate appeals system. The Defendants have also demonstrated that the only inmate appeal completed through the third level of review during the relevant time period concerned allegations not at issue in this case. The Defendants have thus carried their burden to demonstrate that there were available administrative remedies for Plaintiff and that Plaintiff did not properly exhaust those available remedies as to any of his claims. The undisputed evidence shows that California provides an administrative-remedies system for California prisoners to complain about their conditions of confinement, and that Plaintiff used that California inmate-appeal system to complain about other events unrelated to his complaints here.

Once the Defendants met their initial burden, the burden shifted to Plaintiff to come forward with evidence showing that something in his particular case made the existing administrative remedies effectively unavailable to him. See Albino, 747 F.3d at 1172. In his opposition, Plaintiff asserts five grounds for relief: (1) Defendants failed to provide him with a Rand notice, (2) Plaintiff told as many people as possible about his issues but they failed to act; (3) the July 2012 appeal was improperly dismissed; (4) the November 30, 2012, Appeal exhausted Plaintiff's claims as to the correctional officers; and (5) the October 2012 appeal attempted to exhaust all of Plaintiff's claims but staff's failure to respond to this appeal rendered his administrative remedies effectively unavailable.

**A. Rand Notice**

Plaintiff first argues that Defendants' motion for summary judgment should be denied because Defendants failed to properly serve with him a notice pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998). The record does not support this claim.

On November 8, 2016, Defendants filed their motion for summary judgment. (ECF No. 20.) Contemporaneous with their motion they filed a notice advising Plaintiff of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 21.) This notice included a certificate of service showing that Plaintiff was served with the notice on the same date that he was served with the motion for summary judgment. Under these facts, the Court finds that Defendants properly served Plaintiff with the Rand warning.

**B. Plaintiff Informed Others**

Plaintiff next claims that he told as many people as possible about his issues but no one ever helped him. Plaintiff's vocalization of his problems to various individuals, however, does not comply with the CDCR's administrative grievance process. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b). As noted supra, compliance with section 1997e(a) is mandatory and strictly construed. Woodford, 548 U.S. at 85-86; Sapp, 623 F.3d at 818.

**C. The July 2012 Appeal**

Plaintiff's third claim is that he attempted to exhaust his administrative remedies as to Dr. Tate, but the July 2012 appeal was improperly canceled by Defendant Tate without authority, and the cancelation was based on the false assertion that Plaintiff refused to be interviewed. This claim is premised on Dr. Tate's progress note that Plaintiff's appeal was "CANCELED" due to a refusal to visit the clinic.

Plaintiff's argument is unavailing for two reasons. First, notwithstanding the medical progress note, Plaintiff's July 2012 appeal was not canceled by Dr. Tate, but instead by Dr. Sheisha in a formal institutional response. As to Dr. Tate's involvement in the review process, Dr. Sheisha wrote, "In accordance with the CCR, Title 15, Section

3084.7(d)(1)(A), Dr. Tate is not precluded from involvement in the appeal response if necessary to determine facts, provide administrative remedy, does not compromise the integrity of the process, and is not the reviewing authority." Long Decl. Ex. B (ECF No. 20-3 at 15).

Second, while Plaintiff denies that he refused an interview, he submits no evidence that he sought to correct the cancelation or Dr. Tate's involvement in the appeal by filing an appeal to the second level of review.

Since Plaintiff did not avail himself of that right through the administrative review process, the Court finds that this appeal cannot and did not serve to exhaust Plaintiff's claim as to Dr. Tate.

**D. The November 30, 2012, Appeal**

Plaintiff next attempts to meet his burden by asserting that the November 30, 2012, appeal "will definitely show that plaintiff also complained in that 602 appeal, that he was denied access to medical care via the named defendants listed within the appeal…." Pl.'s Resp. to DSUF ¶ 13 (ECF No. 24 at 21). This argument lacks merit. At no point in the November 30, 2012, appeal does Plaintiff state or even suggest that the correctional officer Defendants denied him a cell-mate or acted improperly on October 16, 2012. Plaintiff's vague assertion in the appeal that "Situations of such which eventually contributed to [Plaintiff]'s 'medical mishap,' to which almost ended [Plaintiff]'s life" fails to meet his burden under the regulations. In this appeal, Plaintiff did not "provide the level of detail required by the prison's regulations," Sapp, 623 F.3d at 824, and therefore did not properly exhaust his administrative remedies as to the correctional officer Defendants. See Ngo, 548 U.S. at 90.

**E. October 2012 Appeal**

Finally, Plaintiff contends that he attempted to exhaust his administrative remedies with his October 30, 2012, appeal but such remedies were effectively unavailable because CCI staff was unresponsive.

Exhaustion, of course, is not required where circumstances render administrative remedies "effectively unavailable." Sapp, 623 F.3d at 822-23. To satisfy this exception, a plaintiff may show that officials failed to respond to a properly filed grievance in a timely manner. Vlasich v. Reynoso, 01-cv-5197 AWI LJO, 2006 WL 3762055, at *3 (E.D. Cal. Dec. 20, 2006) (citing Circuit Court decisions holding that a prisoner's administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance.) In support of this claim, Plaintiff relies on the date of his appeal, and on the January 27, 2013, and June 30, 2013, CDCR 22 forms that he submitted asking for the status of his appeal.

In their Reply, Defendants suggest the October 2012 appeal and the related CDCR 22 forms were post-dated and/or doctored and submitted at the same time, as evidenced by the July 18, 2013, institutional receipt date on the appeal.

Of course, the institutional receipt is not dispositive on the question of when Plaintiff submitted the appeal, particularly in light of the signature receipts on the CDCR 22 forms submitted by Plaintiff. Moreover, the determination of whether Plaintiff properly submitted the October 2012 appeal turns on the relative credibility of the parties. There thus exists then a genuine dispute of material fact that cannot be resolved in this motion. Accordingly, the undersigned will recommend that Defendants' motion for summary judgment be denied as to some, though not all, of Plaintiff's claims, as explained more fully infra.

Assuming that Plaintiff can successfully carry his burden and show that administrative remedies were effectively unavailable in relation to this October 2012 appeal, the allegations contained therein do not encompass all of Plaintiff's claims in this case. For example, the appeal makes no reference to or even remotely suggests the involvement of Nurse De Luna in the October 16, 2012, incident. By limiting the universe of individuals involved to "officers" on the Second and Third watch, Plaintiff again failed to provide the level of detail required by the prison's regulations. Plaintiff therefore did

not properly exhaust his administrative remedies against Nurse De Luna. See Ngo, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). See also Cal. Code Regs. tit. 15, § 3084.2(a)(3-4) (inmate "shall list all staff member(s) involved and shall describe their involvement in the issue" or include any information to help identify them, and "shall state all facts known and available to him/her regarding the issue being appealed").

Summary judgment is also appropriate for Dr. Tate. That portion of the October 2012 appeal concerning his conduct was construed as a health care complaint and canceled pursuant to CCR, Title 15, Section 308.6(c)(4) for exceeding time limits for submitting an appeal. The time limit was not calculated based on the July 2013 receipt date of the appeal, but instead on the return date of the earlier July 2012 appeal. That earlier July 2012 appeal was specifically referenced in the cancelation of the October 2012 appeal: "Appeal CCI HC 12034053 submitted by you on 7/23/12, addressed health care issues regarding appliances and medications. Appeal was completed and returned to you on 9/13/12." The September 2012 cancelation notice gave Plaintiff fourteen-days to appeal the cancelation, but he did not re-assert his claims until October 30, 2012, far beyond the fourteen-day timeframe. It is because of that delay that his claims against Dr. Tate were deemed untimely. See Ngo, 548 U.S. at 90-91; Cal. Code Regs. tit. 15, § 3084.4. Under these circumstances, the October 2012 appeal cannot serve to exhaust Plaintiff's administrative remedies as to Dr. Tate.

## VI. Evidentiary Hearing

Where disputes of fact preclude summary judgment regarding exhaustion, a defendant may seek to have such disputes resolved by a judge through an evidentiary hearing. Albino, 747 F.3d at 1169-71. However, Defendants have not requested such a hearing. Because exhaustion is an affirmative defense, see Jones, 549 U.S. at 216

(failure to exhaust is an affirmative defense), the undersigned will not recommend further proceedings on this defense absent a request by Defendants. Defendants reserve the right to seek such a hearing via objections to these findings and recommendation.

## VII. Conclusion

In light of the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' ex parte application for extension of time (ECF No. 19) is GRANTED;
2. The Clerk of Court is directed to assign a district judge to this case; and

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART as follows:
    a. Defendants' motion be GRANTED and judgment be entered for:
        i. Nurse De Luna on Plaintiff's claim that she failed to properly respond to Plaintiff's medical needs on October 16, 2012; and
        ii. Dr. Tate regarding Plaintiff's claim that this Defendant improperly discontinued Plaintiff's medication and revoked a walking cane.
    b. Defendants' motion be DENIED as to:
        i. COs Lenker, Twitty, Holland, and Lundy on Plaintiff's claim that they denied him a cellmate; and
        ii. COs Holland and Twitty on Plaintiff's claim that they failed to take precautions before he suffered a seizure on October 16, 2016, and/or failed to check in on him at any time thereafter.
2. Defendants Lenker, Twitty, Holland, and Lundy be required to file a responsive pleading or motion within fourteen days of the order adopting these findings and recommendations.

The findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).

Within fourteen (14) days after being served with the findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: February 27, 2017

/s/ Michael J. Seng
UNITED STATES MAGISTRATE JUDGE