UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVON ELIMU MCCOY, | CASE NO. 1:15-cv-01428-MJS (PC) |
| Plaintiff, | **ORDER DISMISSING ACTION FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES** |
| v. | |
| DR. H. TATE, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. The parties have consented to magistrate judge jurisdiction.

An evidentiary hearing was held July 7, 2017, to address whether Plaintiff exhausted his administrative remedies as necessary to proceed against Defendant Correctional Officers ("COs") Lenker, Twitty, Holland, and Lundy[1]. For the reasons set forth below, the Court finds he did not exhaust those remedies, and that this action therefore must be dismissed.

---

[1] At the July 7, 2017, evidentiary hearing, Plaintiff dismissed all claims against Defendant Lundy with prejudice.

**I.     Procedural History**

   **A.     Introduction**

Plaintiff initiated this action on September 16, 2015, and it proceeds on a First Amended Complaint ("FAC") filed November 4, 2015. The FAC has been found to state Eighth Amendment deliberate indifference claims against Defendants Dr. Tate, Nurse De Lunda, and COs Lenker, Hill, Twitty, Holland, and Lundy. (ECF No. 11.) Service was ordered on all of the Defendants, and all have now appeared but for CO Hill. (See ECF Nos. 13, 15, 16.)

   **B.     Plaintiff's Relevant Allegations[2]**

Plaintiff suffers from a seizure disorder. He alleges that beginning in June 2012 he asked California Correctional Institution ("CCI") COs Holland, Hill, Lenker, Twitty, and Lundy multiple times for a cellmate who might be able to alert staff if Plaintiff had a seizure. Defendants dismissed his requests as medical issues.

On October 16, 2012, Plaintiff, still without a cellmate, requested help from COs Holland and Twitty because he felt he was going to have a seizure. Neither took any precautions. Plaintiff then had a seizure. No one responded for some six hours even though a neighboring inmate made "man "down" calls and Defendants necessarily passed Plaintiff's cell multiple times.

   **C.     Defendants' Motion for Summary Judgment**

On November 8, 2016, Defendants filed a motion for summary judgment on the ground that Plaintiff had failed to exhaust his administrative remedies as required prior to initiating this suit. (ECF No. 20.) Plaintiff opposed the motion. (ECF No. 24.)

On February 28, 2017, the undersigned issued findings and recommendations to grant the motion as to Nurse De Luna and Dr. Tate and to deny the motion as to COs Lenker, Twitty, Holland and Lundy ("the CO Defendants"). (ECF No. 27.) The Court determined that the CO Defendants had established that administrative remedies were

---
[2] Only allegations against the correctional officer Defendants are included here.

2

available to Plaintiff and that Plaintiff had not exhausted those remedies by submitting his appeal to the third and highest level of review. Summary judgment nevertheless was denied because Plaintiff had raised an issue as to whether administrative remedies were effectively unavailable to him. He claimed he had submitted a timely grievance on October 30, 2012, and followed up with two written inquiries, but prison officials failed to respond.

The CO Defendants requested an evidentiary hearing pursuant to Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014). (ECF No. 32.) They also filed their notice of consent to magistrate judge jurisdiction. Plaintiff previously having consented, the findings and recommendations were converted to an Order and an evidentiary hearing was set for and held on July 7, 2017. (ECF No. 34.)

## II.  Legal Standards

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, 136 S. Ct. 1850, 1854-55 (June 6, 2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA[.]" Jones v. Bock, 549 U.S. 199, 211 (2007) (citation omitted) (cited with approval in Ross, 136 S. Ct. at 1856). The PLRA also requires that prisoners, when grieving their appeal, adhere to CDCR's "critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 91 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 at 218.

The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones, 549 U.S. at 204. The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." Rhodes v. Robinson, 621 F.3d 1002, 1004 (9th Cir. 2010); McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) ("a prisoner does not comply with [the

3

exhaustion] requirement by exhausting available remedies during the course of the litigation").

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare. Cal. Code Regs. tit. 15, § 3084.1. The administrative grievance process is initiated upon an inmate filing an Inmate/Parolee Appeal Form 602. Id. The administrative grievance process has three levels of review. Id. at § 3084.7. The first formal level of the inmate grievance process is usually conducted by the prison's Appeals Coordinator. Id. at § 3-8045(b). Since January 28, 2011, an inmate must file his administrative appeal at the first level within thirty calendar days after an alleged incident and must list all staff members involved. Cal. Code Regs. tit. 15, §§ 3084.2(a)(3), 3084.8(b). If the grievance is not resolved at the first level, the inmate may seek review at the second level. Id. §§ 3084.7(b), 3084.7(d)(2). If the inmate remains dissatisfied with the second level decision, he may seek a decision at the third and final level of review by the CDCR's Director or the Director's designee. Id. §§ 3084.7(c), 3084.7(d)(3). In order to exhaust available remedies, a prisoner must generally proceed through the available levels of review to and including the director's level (i.e., third level). Id. § 3084.1(b).

Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy remains available. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (original emphasis) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross, 136 S. Ct. at 1862.

4

Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Ross, 136 S. Ct. at 1859 (quoting Booth, 532 U.S. at 738). The United States Supreme Court has made clear that The Supreme Court has clarified that there are only "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. These circumstances are as follows: (1) the "administrative procedure . . . operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60 (citations omitted). Other than these circumstances demonstrating the unavailability of an administrative remedy, the mandatory language of 42 U.S.C. § 1997e(a) "foreclose[es] judicial discretion," which "means a court may not excuse a failure to exhaust, even to take [special] circumstances into account." Id., at 1856-57.

Failure to exhaust administrative remedies is an affirmative defense that must be raised by defendants and proven on a motion for summary judgment. See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014), cert. denied sub nom. Scott v. Albino, 135 S. Ct. 403 (2014).

The Ninth Circuit has laid out the analytical approach to be taken by district courts in assessing the merits of a motion for summary judgment based on the alleged failure of a prisoner to exhaust his administrative remedies. As set forth in Albino, 747 F.3d at 1172 (citation and internal quotations omitted):

> [T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy. . . . Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his

5

> particular case that made the existing and generally available administrative remedies effectively unavailable to him. However, ... the ultimate burden of proof remains with the defendant.

If a court concludes that a prisoner failed to exhaust his available administrative remedies, the proper remedy is dismissal without prejudice. See Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

"If 'summary judgment is not appropriate,' as to the issue of exhaustion, 'the district judge may decide disputed questions of fact in a preliminary proceeding.'" Hamilton v. Hart, 2016 WL 1090109, at *4 (E.D. Cal. March 21, 2016) (citing Albino, 747 F.3d at 1168). "[W]hile parties may be expected to simply reiterate their positions as stated in their briefs, 'one of the purposes of an evidentiary hearing is to enable [ ] the finder of fact to see the witness's physical reactions to the questions, to assess the witness's demeanor, and to hear the tone of the witness's voice.'" Hamilton, 2016 WL 1090109, at *4 (quoting U.S. v. Mejia, 69 F.3d 309, 315 (9th Cir. 1995)). "All of this assists the finder of fact in evaluating the witness' credibility." Hamilton, 2016 WL 1090109, at *4.

## III. Discussion

As noted, the undersigned held an evidentiary hearing on July 7, 2017, on the question of whether Plaintiff had exhausted his administrative remedies. The inquiry focused on the veracity of Plaintiff's claim that he had in fact filed a timely grievance and that Defendants failed or refused to process it. Defendants claim that Plaintiff filed no valid grievance until long after the deadline for doing so had expired.

Plaintiff appeared in pro per at the hearing and Deputy Attorney General David Carrasco appeared for Defendants. The issue was deemed submitted at the close of the hearing.

6

### A. The Parties' Evidence

#### 1. Plaintiff

Plaintiff's evidence in support of his claim consisted of: (a) his own testimony; (b) a copy of a grievance dated October 30, 2012; (c) three CDCR 22 forms ("Inmate/Parolee Request for Interview, Item or Service")—one submitted October 28, 2012; the second submitted January 23, 2013; and the third June 30, 2013[3]; (d) a July 14, 2013, letter addressed to "To Whomever it May Concern;" and (e) the July 26, 2013, cancelation of Plaintiff's grievance.

Plaintiff testified that the administrative grievance dated October 30, 2012, and assigned Log Number CCI-0-13-01539 was submitted on that date and complained of Defendants' failures to assign Plaintiff a cellmate, to take other precautions against injury from seizure, and to check in on him after he informed several officers, on October 16, 2012, that he felt ill.

Plaintiff testified he received no response to his grievance, and so on January 27, 2013 and again on June 30, 2013, submitted CDCR 22 forms complaining of the non-response and inquiring regarding its status. He did not submit a copy of the October 30, 2012 grievance with either of these forms.

Next, Plaintiff wrote a letter dated July 14, 2013, "To Whomever it May Concern", again complaining that he had not yet received a response to his October 30, 2012, grievance. Attached to this letter were copies of the October 30, 2012, grievance, and the two CDCR 22 forms.

On July 26, 2013, Plaintiff's grievance, stamped "received" July 18, 2013, was canceled as untimely at the second level of review.

#### 2. Defendants

Defendants presented in evidence the following at the hearing: (a) Plaintiff's testimony; (b) Plaintiff's CCI appeal log; (c) a January 23, 2013, letter Plaintiff wrote to

---
[3] There had been a question raised as to the authenticity of the January 27, 2013, and the June 30, 2013, CDCR 22 forms, but Defendants stipulated to their authenticity at the hearing.

Captain Lundy; (d) Captain Lundy's January 28, 2013, response to Plaintiff's letter; (e) Plaintiff's inmate grievances dating July 23, 2012, Log Number CCI HC 1203-4053 (medical claim against Dr. Tate); November 30, 2012, Log Number CCI-0-12-2751 (missing inmate property); and November 30, 2012, Log Number CCI-0-12-2949 (retaliation by COs Holland, Lenker, Hill, and Twitty); (f) testimony from witness Jerry Wood; and (g) testimony from witness James Lundy.

Witness Wood, the Appeals Coordinator at CCI since a point in time subsequent to October 2012, testified as to currently existing appeals procedures he knows had been in place at CCI since before he began. A computer-generated notice of assignment is always automatically produced and provided to an inmate within no more than seven days after an appeal is received. An inmate may inquire about the status of a grievance by filing a CDCR 22 form as Plaintiff did, but the mere inquiry is not evidence that a grievance was in fact filed; it could be used to suggest the existence of something that had never occurred. The best way to document the earlier filing of the grievance is to attach a copy of it to the Form 22 inquiry. Plaintiff did not attach a copy of the purported October 30, 2012, grievance to either of his CDCR 22 forms. Finally, Wood acknowledged that an appeal could be lost, but that is "very out of the ordinary". In an average year he receives about 4-6 inmate complaints that an appeal has been lost, but he has only verified three lost appeals in three years.

Captain Lundy had been employed at CCI from 1987 to 2016. On January 28, 2013, he received Plaintiff's January 23, 2013, letter inquiring about the status of two pending appeals, neither of which related to an October 30, 2012 appeal. He reviewed Plaintiff's appeal log and found that there were two, and only two, pending at that time—neither was an October 30, 2012 appeal. Lundy informed Plaintiff that the two appeals he inquired about had been assigned to institutional staff for a response. Captain Lundy added that he had "never seen proof" of an appeal being lost.

Defendants elicited testimony from Plaintiff to the effect that he had filed and diligently followed up on other grievances pending during late 2012 and early 2013 -- a medical claim against Dr. Tate, a property claim, and a retaliation claim. Plaintiff acknowledged receiving at least one assignment notice on one of those other claims, but none on the October 30, 2012, grievance. That is why he informally asked Captain Lundy about it. (Plaintiff's suggested he had asked Lundy about his "medical situation" during a classification hearing, and that it was at Captain Lundy's suggestion, in response, that he later filed the CDCR 22 form inquiry about that grievance.) Captain Lundy denied any recollection of any such conversation with Plaintiff at any time.

**B.  Analysis**

The Court finds that the testimony and evidence presented by Plaintiff insufficiently corroborated or credible to refute persuasive evidence that an adequate administrative remedy system was available to Plaintiff but not timely pursued.

In support of his position that he filed a timely grievance, Plaintiff refers to the two CDCR 22 forms that he filed—one on January 23, 2013, and the second on June 30, 2013—and a July 14, 2013, letter addressed to "To Whomever it May Concern," each of which internally references the October 30, 2012, grievance; the last of these inquiries included a copy of the October 30, grievance. These documents evidence that Plaintiff claimed on those dates that he had filed a grievance dated October 30, 2012;  these inquiries in and of themselves  provide some support that he did file such a grievance. But it is also possible that the CDCR 22 form inquiries and the July 2013 letter were designed to suggest, falsely, that such a grievance had been filed when it had not, and that Plaintiff took that approach upon realizing that the time for filing a grievance about events on October 16, 2012, had expired. Thus, the Court must determine the credibility of Plaintiff's claims in light of all the evidence.

First, the Court cannot disregard the adverse credibility inferences derivable from Plaintiff's felony conviction and the fact that as a prisoner sentenced to an indeterminate

life term, he may not have the same fear of committing perjury as a free citizen or an inmate facing a reduced sentence.

Second, while an inmate's use of the CDCR 22 form can bolster his claim that he filed a timely grievance, the form is not persuasive by itself. As Appeals Coordinator Wood testified, a CDCR Form 22 inquiry form may evidence an earlier grievance when a copy of the grievance itself is attached. No copy of the purported October 30, 2012, grievance was attached to either of Plaintiff's CDCR 22 inquiries.

Third, Plaintiff admits that he did not receive an automatically-generated assignment notice following his submission of the grievance, though he has acknowledged receiving similar notices in the past. Rather than immediately submit a CDCR 22 form inquiring about the grievance's status, he claims to have informally asked Captain Lundy about it. The latter allegedly said he would look into it, but never got back to Plaintiff. As a result, Plaintiff submitted the January 2013 CDCR 22 Form, nearly three months after first submitting his grievance.

The Court is unable to credit this claim. First, Captain Lundy denied having had any conversation with Plaintiff regarding the status of such an appeal.

Next, during his cross-examination of Captain Lundy, Plaintiff claimed that this informal conversation followed a classification committee hearing and prompted Plaintiff to write a CDCR 22 form. But the form referenced is dated October 28, 2012. Plaintiff did not explain how he could have discussed the October 30, 2012, grievance during a conversation that occurred on or before October 28, 2012.

The October 28, 2012, CDCR 22 form itself is a request for "a cellie" and does discuss the claims underlying this case. See Pl.'s Ex. C (ECF No. 39 at 7). There, Plaintiff wrote that he had a seizure on October 16, 2012, that there was a delay before he received medical care, and that he was hospitalized as a result of the seizure. Captain Lundy responded on November 1, 2012, noting that Plaintiff had since been assigned a cellmate. A Form 22 inquiry is insufficient to exhaust administrative remedies

under the prison's grievance process. See Jones v. Bock, 549 U.S. 199, 218 (2006). It also fails to corroborate Plaintiff's claim that he filed a 602 inmate grievance two days later.

Further, the evidence before the Court is that the inmate appeal tracking system automatically produces a receipt "every time" a grievance is filed and does so within seven days of it being filed. Plaintiff admits he received no such acknowledgement in response to his purported October 30, 2012, grievance. That is some evidence no such grievance was filed. In addition, since Plaintiff had received such an acknowledgement earlier, he should have expected one and, not receiving same, taken prompt and <u>documented</u> steps to follow up. He did nothing beyond allegedly inquiring verbally of Captain Lundy and then inquired about the grievance either before he filed it or three months later.

Even assuming Plaintiff spoke to Captain Lundy at some point in time after he filed the grievance, Plaintiff's delay in following up on an alleged October 30, 2012 grievance until three, and then eight months, later reflects a profound lack of diligence. It further raises credibility issues in light of Plaintiff's prompt follow-up on two other grievances pending in the same time frame. Why would Plaintiff follow up on two but not the third? There is documented follow-up on those claims (one for a property loss, another for retaliation) which, as the defense argues, would be expected to be of lesser import to Plaintiff than the life-threatening risk of an undetected seizure, and yet there is no such prompt documented follow-up on the latter.

Plaintiff makes additional arguments. He argues, first, that the July 26, 2013, cancelation notice's reference to an "appeal dated 10/30/12" is an acknowledgement by CDCR that the grievance was *filed* on that date. The defense responds that the cancellation simply uses the same date that Plaintiff used and di so only for purposes of consistency in reference and identification. That is logical. This is not evidence of the filing of a timely grievance.

11

Next, Plaintiff refers to a notation on the October 30, 2012, grievance indicating that the appeal was bypassed at the first level of review. He argues this is definitive proof that someone accepted this grievance on the date filed and simply failed to follow proper procedures. The more plausible interpretation is that the notation—"Bypassed at the First Level of Review. Go to Section E."—was made when the form was received by CCI in July 2013, and sent to the second level of review for screening.

Lastly, Plaintiff argues that he did not submit copies of the October 30 grievance or earlier Form 22 inquiries with his July 18, 2013, "To Whom It May Concern" letter. He claims he submitted them much earlier on the dates shown on each. This, Plaintiff argues, is evidence that someone was holding onto his paperwork until Plaintiff wrote the July 2013 letter; when they found it then, they simply dated both of the documents with the July date. Contrary to this concluding argument, though, Plaintiff testified that he submitted the grievance (his personal copy) with the July 2013 letter. Additionally, Plaintiff wrote in the letter itself that he included copies of his CDCR 22 forms. This, is consistent with Defendants' rebuttal argument that all three documents were received with the July 2013 letter and stamped "received" at that time.

For all the reasons described above, including the fact that Plaintiff produced no evidence that anyone in the Appeals office had any motivation whatsoever to dispose of Plaintiff's non-extraordinary claim, the Court cannot credit Plaintiff's assertion that he timely submitted a grievance which Defendants either lost or refused to process, thereby frustrating Plaintiff's ability to timely exhaust his administrative remedies.

There being insufficient evidence that Plaintiff filed a timely grievance, the Court finds that Plaintiff did not exhaust his administrative remedies prior to initiating this action.

## IV. Conclusion

For the above reasons, IT IS HEREBY ORDERED that this action is dismissed in its entirely for Plaintiff's failure to exhaust his administrative remedies. The Clerk of Court shall terminate all pending motions and close this case.

IT IS SO ORDERED.

Dated: August 10, 2017 /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE